UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES E. HEBERT,<br><br>                    Petitioner,<br><br>v.<br><br>ISCI WARDEN JOHANNA SMITH,<br><br>                    Respondent. | Case No. 1:09-cv-00324-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

        Pending before the Court is Petitioner's Petition Opposing Granting the State any

Summary Relief (Dkt. 39), which will be treated as a motion to reconsider the procedural

default of Petitioner's claims in the Order filed on July 18, 2011 (Dkt. 33). In addition,

the remaining claims in the Petition for Writ of Habeas Corpus (Dkt. 3) are now ripe for

adjudication. Petitioner has submitted supplemental argument, which has all been

considered, along with his earlier submissions. (Dkt. 49.) Petitioner's filings have been

liberally construed.

        Having fully reviewed the record, including the state court record, the Court finds

that the parties have adequately presented the facts and legal arguments in the briefs and

record and that the decisional process would not be significantly aided by oral argument.

Therefore, the Court will decide this matter on the written motions, briefs and record

**MEMORANDUM DECISION AND ORDER - 1**

without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying the Petition for Writ of Habeas Corpus with prejudice.

## BACKGROUND

In August 2002, Petitioner was charged with lewd conduct with a minor under sixteen, involving sexual acts with his teenaged step-daughter, S.E., that occurred between July 1, 1998, and January 27, 2000. (State's Lodging A-1, pp. 17-18.) In October 2002, Petitioner was charged with sexual battery of a minor child under sixteen with the same victim, for sexual acts committed between January 28, 2000, and January 27, 2002. (*Id.*, pp. 28-29.)

S.E.'s version of events is that Petitioner started sexually abusing her at the age of eleven, culminating in S.E. becoming pregnant in September 2000 with Petitioner's baby, when she was sixteen years old. After S.E. became pregnant, she and Petitioner were eventually married in Mexico. DNA evidence showed Petitioner to be the father of S.E.'s child. The child was born in 2001 when S.E. was still seventeen years of age.

Petitioner told a different version of events, as re-told by the Idaho Court of Appeals: "Hebert[] attempt[ed] to explain away [the] proof of intercourse by testifying that not once, but twice, while in a drunken stupor he was raped by S.E." (State's Lodging B-5, p. 6.) The Court of Appeals concluded that Petitioner's explanation of the conception of the baby "lacks plausibility, as does much of the remainder of his testimony." (*Id.*)

**MEMORANDUM DECISION AND ORDER - 2**

After Petitioner was charged with the two counts, his criminal cases were consolidated for jury trial in the Second Judicial District Court, Clearwater County, Idaho. Petitioner was represented by a series of three attorneys during the case: Charles Kovis, Duane Golden, and Jack Hathaway. Mr. Hathaway represented Petitioner at trial.

The prosecution's witnesses consisted of the victim, S.E.; the victim's mother, Deanna Hebert; and Detective Becky Drewery, who had interviewed the victim, the victim's mother, and Petitioner before the charges were brought. The prosecution introduced the DNA test of S.E.'s baby, showing Petitioner was the father to a 99.99% certainty (State's Lodging A-9), as well as a letter from Petitioner to S.E., that appeared to be discussing their sexual encounters and Petitioner's romantic love for S.E. (Petitioner denied this was the intent of the letter and asserted that two pages of the letter were missing that would show that what Petitioner was really saying is that Deanna often played God in the family.)[1] (State's Lodgings A- pp. 477-80; State's Lodging A-10.)

---

[1] In part, the letter reads: "If I had never tasted your wine or smelled your fragrance or hold [sic] your awesome body or made love to your boby [sic] or anything like ["that" is stricken], talking to you when I needed a friend you may [page break] be young but your interlect [sic] is far beyond your years and I don't think your mom could handle the fact that me and you didn't argue and we did get along for the most part and I do think jelusy [sic] played on her up until I told her I wanted you. . . ." This sentence carries over from page one to page two, with the page break as indicated, and page two is signed by Petitioner as the apparent conclusion of the letter, "Love For Ever and allways [sic], James"; Petitioner's missing pages theory that allegedly would change the intent of the letter is difficult to understand. (State's Lodging A-10.)

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner testified on behalf of himself in his defense. Petitioner's counsel called no other witnesses and would not introduce items such as documentary evidence of Petitioner's marriage to S.E. that occurred after S.E. became pregnant.

A jury convicted Petitioner of both charges. The trial court then sentenced Petitioner to thirty years fixed with ten indeterminate for the lewd conduct crime, and ten years indeterminate for the sexual battery crime, to be served consecutively. (State's Lodging A-1, pp. 165-67.)

Petitioner filed a direct appeal, raising the issue of whether the trial court erred by denying his motion in limine to exclude testimony regarding uncharged sexual contact between him and the victim. The Idaho Court of Appeals affirmed the conviction, concluding that the evidence was properly admitted under the Idaho Rules of Evidence and that a limiting instruction was properly given. Petitioner filed a petition for review before the Idaho Supreme Court, which was denied on June 28, 2005, with the remittitur issuing the same day. (State's Lodgings B-1 through B-9.)

Petitioner next filed a pro se petition for post-conviction relief, raising twenty-two claims and requesting appointment of counsel. (State's Lodging C-1, pp. 1-13.) Petitioner's appointed counsel filed a motion to amend the petition, which was granted. (*Id*., pp. 25-27 & 28.) An amended petition was not filed, but the claims to be presented were set forth in the motion to amend and a pretrial brief that focused on a reduced number of claims. (*Id*., pp. 25-27.) Pursuant to the parties' stipulation, the state district

**MEMORANDUM DECISION AND ORDER - 4**

court entered a pretrial order ("stipulated order") outlining Petitioner's claims as follows:
(1) ineffective assistance of *trial* counsel for (a) failing to object to the court granting
seven rather than ten peremptory challenges during jury selection, (b) failing to file a
motion to dismiss on speedy trial grounds under the Constitution and statute, (c) failing to
spend sufficient trial preparation time with Petitioner, and (d) failing to object to the trial
judge entering the jury room on two occasions; and (2) ineffective assistance of *appellate*
counsel for failing to challenge (a) the length of Petitioner's sentence, (b) the seven
peremptory challenge limit, and (c) the speedy trial issue. (*Id*., pp. 41-42.) Petitioner
asserts that the trial court permitted him to supplement his counsel's presentation of
issues with additional issues that Petitioner thought were important. The trial court held
an evidentiary hearing, and thereafter denied relief.

On appeal, Petitioner's appointed conflict counsel, Dennis Benjamin, withdrew
from the case because he believed there was only one appealable issue, and Petitioner
wished to present additional issues. (State's Lodgings D-1 to D-3.) Petitioner then
proceeded pro se and filed a brief addressing twenty-two issues. (State's Lodging D-5.)
The Idaho Court of Appeals affirmed denial of post-conviction relief, addressing some
claims on the merits in detail, and addressing or refusing to address others for lack of
merit or on procedural grounds. (State's Lodging D-8.) Petitioner filed a pro se petition
for review, which the Idaho Supreme Court denied. (State's Lodgings D-9 & D-10.)

**MEMORANDUM DECISION AND ORDER - 5**

Petitioner filed the federal Petition for Writ of Habeas Corpus in this action on June 30, 2009. The Court dismissed a number of Petitioner's claims as procedurally defaulted. Petitioner objected, arguing that, because he submitted extensive pro se notes regarding claims beyond those limited claims his counsel chose to present, he did, in fact, fully and fairly present his claims to the Idaho courts, and they are not procedurally defaulted. The Court notified Petitioner that it would consider hearing all of his claims on the merits, regardless of whether some are procedurally defaulted.

In her Answer, Respondent Johanna Smith pointed out that the pages of the Petition, which was not numbered, appeared to have been mixed up upon filing, and that the Petition actually contained far fewer claims than the Court originally identified. (Dkt. 3.) Petitioner also agrees that the pages were mixed up. (Dkt. 48.) After reviewing the Petition again, the Court agrees. Rather than having over twenty subclaims, Claim Four has only four subclaims, because the long listing of other claims is part of the procedural history of Petitioner's state post-conviction case, not federal habeas corpus claims, as it earlier appeared.

On February 9, 2012, Petitioner asked that he be permitted to substitute the "argument" portion of his Petition to properly address his claims. The Court will allow both of Petitioner's arguments to remain. (Dkts. 3, 49.)

**MEMORANDUM DECISION AND ORDER - 6**

## REVIEW OF HABEAS CORPUS CLAIMS

**1.      Procedurally Defaulted Claims Can Be Heard on the Merits**

Because it is clear that Petitioner's procedurally defaulted claims are without

merit, the Court will address them without regard to procedural default. *Cf.* 28 U.S.C. §

2254(b)(2) (unexhausted claims may be dismissed on the merits). The United States

Supreme Court has held that federal courts are not required to address a procedural

default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*,

520 U.S. 518 (1997); *see also Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002)

("appeals courts are empowered to, and in some cases should, reach the merits of habeas

petitions if they are, on their face and without regard to any facts that could be developed

below, clearly not meritorious despite an asserted procedural bar").

**2.      Standard of Law for Review of Petition for Writ of Habeas Corpus**

The Court will review those claims adjudicated by the Idaho Court of Appeals

(Claims 1, 2, and portions of Claim 3 and 4) under AEDPA's deferential standard, *see* 28

U.S.C. § 2254, and those claims not adjudicated by the state appellate court (Claim 5 and

portions of Claims 3 and 4) under a de novo standard. *See Killian v. Poole*, 282 F.3d

1204, 208 (9th Cir. 2002).

Under the Anti-terrorism and Effective Death Penalty Act (AEDPA), federal

habeas corpus relief may be granted on claims adjudicated on the merits in a state court

judgment only when the federal court determines that the petitioner "is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). The "last reasoned" state court decision is the subject of AEDPA review.

*Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

Under § 2254(d), as amended by, federal habeas corpus relief is further limited to

instances where the state-court adjudication of the merits:

1.    resulted in a decision that was contrary to, or involved an
      unreasonable application of, clearly established Federal law, as
      determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable
      determination of the facts in light of the evidence presented in the
      state court proceeding.

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test. Under the first test, for a

decision to be "contrary to" clearly established federal law, the petitioner must show that

the state court applied "a rule of law different from the governing law set forth in United

States Supreme Court precedent, or that the state court confronted a set of facts that are

materially indistinguishable from a decision of the Supreme Court and nevertheless

arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S.

362, 404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1), the petitioner must show that the state court was "unreasonable in applying

**MEMORANDUM DECISION AND ORDER - 8**

the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). However, if the Court determines that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, then the Court performs a de novo review of the claim. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003); *see also Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004). Where there has been an unreasonable determination of the facts by the state appellate court, the writ can be granted only when the petitioner shows a federal violation, as specified in § 2254(a), *and* either a "contrary" or unreasonable application of federal law *or* an unreasonable determination of the facts by the state court, as specified in § 2254(d). *See, e.g., Ben-Yisrayl v. Buss*, 540 F.3d 542, 550 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2890 (2009).

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for

determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

In *Harrington v. Richter*, 131 S.Ct. 770 (2011), the United States Supreme Court reiterated that the federal courts may not simply re-determine the claim on its merits after the highest state court has done so, just because the federal court would have made a different decision. Rather, the review is necessarily deferential. If fairminded jurists could disagree on the correctness of the state court's decision, then a federal court cannot grant relief under § 2254(d). *Id*. at 778. The Supreme Court emphasized: "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786 (internal citation omitted).

Judicial notice will be taken of the court docket in the underlying state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

**3.     Claim One (de novo review)**

Claim One is that Petitioner was appointed an attorney, John Hathaway, who would not be his voice at trial, contrary to the First Amendment of the United States Constitution, namely, the right to access the courts for the redress of grievances. (Petition, Dkt. 3 at 2.) This claim lies at the intersection of several important rights. The First Amendment protects a person's right to give testimony at a public hearing. *See Robinson v. York*, 566 F.3d 817, 823 (9th Cir. 2009). The First Amendment also protects a person's

**MEMORANDUM DECISION AND ORDER - 10**

right to access the courts. The provision of legal counsel is a constitutionally acceptable method for a defendant to access the courts. *See United States v. Cooper*, 375 F.3d 1041, 1051-52 (10th Cir. 2004) (citing *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996)); *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005).

Also bearing on Petitioner's claim is a criminal defendant's right to the assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963). A criminal defendant also has a Sixth Amendment right to waive counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 807 (1975). "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id*. at 819-20.

When a Petitioner elects to be represented by counsel, rather than represent himself, the following *Strickland* standards apply as to counsel's manner of representation:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

**MEMORANDUM DECISION AND ORDER - 11**

Here, Petitioner chose to be represented by counsel, instead of representing himself. Petitioner disagreed with Mr. Hathaway's chosen strategy for defense of the case, and with counsel's decision not to present evidence that was contrary to the chosen strategy. The defenses that counsel had to choose from were severely limited. In counsel's own words:

> As far as any defense on the sexual abuse of a child, Mr. Hebert – we, for that matter, myself and Mr. Hebert were in serious trouble because he had not only someone under 18, we had someone under 18 who bore a child by him. Who had been on a truck by him – or with him, long-haul trucking.

(State's Lodging C-3, p. 386.)

The defenses were also limited by law; for example, the parties' marriage was *not* a defense to the criminal charge, which was for conduct alleged to have occurred pre-marriage, and the time for the sexual conduct was marked by counting back from the birth of the child into the victim's sixteenth year of age. Under these very difficult circumstances, nothing in the record shows that Mr. Hathaway's strategy or investigation was inadequate to the degree that he "made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687, a standard analogous to Petitioner's claim that counsel was not functioning as Petitioner's "voice" under the First Amendment. Neither does the record reflect that Petitioner's defense was prejudiced by the strategy, investigation, or presentation of the defense, as the Court more fully explains below in its discussion of the ineffective assistance of counsel claims.

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner suggests that his trial counsel's performance was so deficient that trial counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, meeting the test of *United States v. Cronic*, 466 U.S. 648, 659 (1984). The record does not support such an assertion. Petitioner's counsel put on an adequate defense, filing various motions in limine, (State's Lodging A-1), cross-examining the victim with tactfulness, cross-examining the other witnesses, objecting to the State's evidence, and putting on Petitioner's defense of being raped through Petitioner's own testimony. (State's Lodgings A-3 through A-6: D-8, p. 11.) Mr. Hathaway argued in closing that James' testimony of rape was never refuted by the victim or her mother. (State's Lodging A-6.) In short, Petitioner's counsel developed and put on reasonable defenses under the very difficult circumstances posed by the contrary evidence in the case.

Petitioner's claims that counsel was deficient are unsupported by the facts and the trial transcript. In *Cronic*, the Supreme Court reminded:

> Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade.

466 U.S. at 657 n.19. By analogy, *Cronic* does not lend support for Petitioner's "failure to be my voice" argument under the First Amendment

The Court concludes that, under a de novo standard of review, Petitioner has not provided sufficient facts to show that any of his First Amendment rights, including the right to testify and the right to access the courts, were violated as a result of his counsel's

**MEMORANDUM DECISION AND ORDER - 13**

representation or a result of any factor other than his own choice to avoid self-representation. Accordingly, Petitioner is not entitled to relief on this claim.

4.      **Claim Two (de novo review)**

Claim Two is that Petitioner was denied due process under the Fifth Amendment (made applicable to the states through the Fourteenth Amendment) when his pretrial attorney, Charles Kovis, failed to ensure that the Petitioner was bound over properly in on the sexual battery charge, Case No. CR-02-00383. (Petition, Dkt. 3 at 2.)

Idaho Criminal Rule 5.1(b) provides: "An order binding a defendant over for trial on a felony charge requires only a showing that a public offense has been committed and that there is probable cause to believe that the defendant committed the offense."

Idaho Criminal Rule 5.1(a) provides:

Unless indicted by a grand jury, a defendant, when charged in a complaint with any felony, is entitled to a preliminary hearing. If the defendant waives the preliminary hearing, the magistrate shall forthwith file a written order in the district court holding the defendant to answer. If the defendant does not waive the preliminary hearing, the magistrate shall fix a time for the preliminary hearing to be held within a reasonable time, but in any event not later than fourteen (14) days following the defendant's initial appearance if the defendant is in custody and no later than twenty-one (21) days after the initial appearance if the defendant is not in custody. With the consent of the defendant and upon showing of good cause, taking into account the public interest and prompt disposition of criminal cases, time limits in this subsection may be extended. In the absence of such consent by the defendant, time limits may be extended only upon a showing that extraordinary circumstances exist, including disqualification of the magistrate by the defendant pursuant to Rule 25.

**MEMORANDUM DECISION AND ORDER - 14**

To prevail on federal habeas corpus review, Petitioner must show that his custody is in violation of federal, not state law. In *U.S. ex rel. Hughes v. Gault*, 271 U.S. 142, 149 (1926), the Supreme Court of the United States clarified:

> The Constitution does not require any preliminary hearing before a person charged with a crime against the United States is brought into the Court having jurisdiction of the charge. There he may deny the jurisdiction of the Court as he may deny his guilt, and the Constitution is satisfied by his right to contest it there.

Many years later, in *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court further explained:

> Although we conclude that the Constitution does not require an adversary determination of probable cause, we recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole.

*Id*., p. 123 (Fourth Amendment context).

Petitioner asserts that, on July 27, 2002, he was arrested on two counts of statutory rape, but, prior to the preliminary hearing, the State amended the complaint to include one count of lewd conduct with a minor child under the age of 16 years old, and one count of sexual battery of a minor child 16 or 17 years old.

At the August 28, 2002 preliminary hearing, Petitioner was bound over on the lewd conduct charge, but the court found there was insufficient evidence to bind Petitioner over on the sexual battery count.

**MEMORANDUM DECISION AND ORDER - 15**

Petitioner alleges, that on October 7, 2003, Petitioner was tried for both charges, even though he was never bound over for the sexual battery count. He alleges that "even though Kovis [Petitioner's trial counsel prior to John Hathaway] tried to waive the Petitioner's preliminary hearing in October 1, 2002, during another arraignment hearing, the waiver was not properly waived by Mr. Kovis, he never had the Petitioner's consent to waive the preliminary hearing; and it was never successfully waived in the arraignment hearing due to the fact that the court never informed the Petitioner of the rights that he would be giving up if he chose to waive the preliminary hearing, therefore rendering the waiver invalid." (Dkt. 49, p. 2.)

The hearing transcript from October 1, 2002, reflects that Petitioner's attorney, Mr. Kovis, stated on the record:

> And it would be my client's intention to waive his preliminary hearing in this matter, Your Honor. Agree to be bound over on the complaint of sexual battery, and we request that the trial date order in this case be the same as the one in his other case.

(State's Lodging A-2, p. 23.)

The record also reflects that the court informed Petitioner that he was being charged by an information (not an indictment) and asked Petitioner if he understood his rights several times, to which Petitioner responded that he did. Petitioner then pleaded "not guilty," through counsel, and a jury trial for both criminal counts was set. (*Id.*, pp. 23-26.) Nothing in the record reflects that Petitioner did not wish to waive his right to a

preliminary hearing on the sexual battery count, as he stood in court and heard his counsel represent that to the judge.

Petitioner now argues that a waiver of a preliminary hearing equals an admission that a defendant, in fact, committed the crime. This is a mis-perception of the law; and, in Petitioner's case, he immediately entered a "not guilty" plea, which shows that no one could have perceived waiver of the preliminary hearing in his case as an admission that he committed the crime. Here, Petitioner's claim is brought as a due process claim, rather than an ineffective assistance of counsel.

In a case with similar facts, *Kerns v. Peyton*, 292 F.Supp. 182, 183-84 (D.C. Va. 1968), the court reasoned:

> Petitioner in his first allegation says that he was denied a preliminary hearing without ever waiving his right to such a hearing. Petitioner offers no evidence to show that he was prejudiced by the lack of a preliminary hearing; he contends only that the absence of the hearing per se was a denial of his constitutional rights. The records in the trial court state that the preliminary hearing was waived. Without deciding whether the preliminary hearing was waived or denied, the court points out that a preliminary hearing is not a constitutional right guaranteed either by the [state] or the United States Constitution. *Dillard v. Bomar*, 342 F.2d 789 (6th Cir. 1965); *Snyder v. Commonwealth*, 202 Va. 1009, 121 S.E.2d 452 (1961). The preliminary hearing is only a statutory right given by § 19.1-163.1 of the Va.Code Ann. (1960 Replacement Vol.). . . . .[A] denial of the preliminary hearing is not sufficient grounds for habeas corpus. *See Vees v. Peyton*, 352 F.2d 325 (4th Cir. 1965); *Garrison v. Johnston*, 104 F.2d 128 (9th Cir. 1939); *Gibson v. Peyton*, 262 F.Supp. 574 (D.C.1966).

Here, the record is clear that, at the October 1, 2002, arraignment hearing, Petitioner's counsel waived Petitioner's right to have a preliminary hearing, and Petitioner stated that he understood the rights he was waiving. Petitioner was given all of

**MEMORANDUM DECISION AND ORDER - 17**

the process he was due under these circumstances. Accordingly, Claim Two is subject to denial under a de novo standard of review.

**5.      Claim Three: Ineffective Assistance of Trial Counsel**

Petitioner brings several ineffective assistance of counsel claims, and each will be addressed as a subpart of Claim Three. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court determined that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

The *Strickland* Court outlined how to use the factors of deficient performance and prejudice to assess a claim that counsel failed to investigate a defendant's case:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty

**MEMORANDUM DECISION AND ORDER - 18**

to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

A.   *Claim Three (1)* **(AEDPA review)**

Claim Three (1) is that Mr. Hathaway was ineffective for refusing to subpoena witnesses for trial. To prevail on such an ineffective assistance of counsel claim, a petitioner must identify what evidence counsel should have presented and show that there is a reasonable probability that, but for counsel's failure to call the witnesses, the result of the jury trial would have been different. *Strickland*, 466 U.S. at 694.

At the post-conviction hearing, Petitioner's counsel stated that Petitioner wished to call Ricky Robertson, who would have testified that he had sex with S.E. in North Carolina when S.E. was 10 years old. Petitioner's counsel testified that such testimony

**MEMORANDUM DECISION AND ORDER - 19**

would have been inadmissible because prior sexual activity of a victim is inadmissible by statute. (State's Lodging C-3, pp. 384-85.)

Petitioner also wished to call several witnesses who would have contradicted S.E.'s testimony that she and Petitioner had sex in their backyard on the evening of July 4, 1999 (one year before the first alleged rape incident), because these individuals were at Petitioner's home and knew that Petitioner was not at his home on that evening. (Dkt. 49.) (It is unclear how Petitioner knew these guests were at his home on that date if he was not there himself.)

These witnesses from July 4, 1999, include Heather Nelson, who was one of S.E.'s friends. Heather could also testify that S.E. was sexually promiscuous and that S.E. had gone to a high school basketball game while pregnant, contradicting S.E.'s testimony that she was not permitted to be outside of Petitioner's presence while she was pregnant. Petitioner also wanted Mr. Hathaway to call Heather's parents, Janice and Jerry Nelson, who could have testified that S.E. stole items at school and that she was a bad influence on their daughter, Heather. (State's Lodging C-2, pp. 268-70.)

Shawn Carlock was a DEA officer in Orofino, who would have testified that he found marijuana in S.E.'s top dresser drawer. (*Id.*, p. 271.)

Robert Acrostrom would have testified that he was at Petitioner's home on July 4, 1999, but Petitioner was not home. (*Id.*, pp. 271-72.) This witness could also testify that S.E. would sneak out on numerous occasions to go to parties with boys. (*Id.*, p. 271.)

**MEMORANDUM DECISION AND ORDER - 20**

Chris Case would have testified that Petitioner was not at home on July 4, 1999. (*Id.*, p. 272.)

Matt Freeman was a young man from Orofino High School who dated S.E. He could have testified that S.E. went to Canada with him, and that S.E.'s mother (Petitioner's wife) had sex with him when he was between 15 and 17 years old. (*Id.*, pp. 272-73.) Freeman could also testify that Petitioner was not home on July 4, 1999.

John Townsend would have testified that Petitioner spent the night at Townsend's house on July 4, 1999, proving that Petitioner "was not on Jerome Avenue having sex with [S.E.] all over the yard." (*Id.*, p. 274.)

Lee Grant and Cheyene Wright would have testified that Petitioner was trying to move in with them, but S.E.'s mother kept coming over and "forcing [him] back over to 751 Johnson Avenue to be in the house with them." (*Id.*, p. 275.)

Kelsie Engles, a prison guard at Orofino, who was a friend of S.E., would have testified that S.E. had a sexual relationship with Kelsie's boyfriend, Josh Kanobalich. (*Id.*, p. 276.)

Petitioner also wanted counsel to call Jesse Dewey, from North Carolina, to impeach S.E.'s testimony that she did not have any religious training other than from Petitioner. Dewey was someone who went to church with S.E. in North Carolina. (State's Lodging C-3, p. 262.) Kristi Robertson, was another "friend and church partner" of S.E. (*Id.*, p. 238.) Serena Haskins was a friend of S.E.'s in Boise, who was a "shoplifting buddy and church partner." (*Id.*) Sarah Early was a person who was with S.E. when S.E.

**MEMORANDUM DECISION AND ORDER - 21**

was shoplifting in McCall, and could have testified that S.E. tried to blame Sarah with the crime. (*Id.*, p. 239.)

Finally, Petitioner mentions Dr. Jeannine Bigsby and Dr. Kelly McGrath in his federal court filings. However, Petitioner has not provided facts showing what their testimony would have revealed. If these doctors would have been able to testify about Petitioner's impotence, then Petitioner should have provided an affidavit from them stating the particular content of their opinions and their willingness to have testified. In any event, such testimony would have been contrary to the main defense of the case. *See Turk v. White*, 116 F.3d 1264, 1266 (9th Cir. 1997) (pursuit of conflicting theories can confuse the jury and undermine any chance the defendant has of an acquittal).

While Petitioner speculates as to what the foregoing witnesses could have provided in their testimony, Petitioner has not provided any statement from any of these witnesses, either written or recorded, whether under penalty of perjury or not. Importantly, he has not provided anything showing that any of these witnesses would have been willing to come to court to testify on his behalf (especially the persons listed as S.E.'s friends), and he has not shown that, had they been forced to come via subpoena, they would have testified favorably.

In the opinion denying post-conviction relief, the state district court concluded: "Mr. Hathaway properly declined to call all the witnesses Mr. Hebert wanted to call because they had nothing to do with his guilt or innocence. Rather, they were an attempt

**MEMORANDUM DECISION AND ORDER - 22**

to besmirch the reputations of S.E. and her mother, none of which was admissible."
(State's Lodging C-1, p. 131.)

The Idaho Court of Appeals agreed, citing the fact that Petitioner failed to produce
any affidavits or testimony from his witnesses at the post-conviction hearing. (State's
Lodging D-8, pp.5, 9.) The Court of Appeals summarized Petitioner's witnesses'
testimony as providing information that "the victim was promiscuous, that she was a bad
influence on other children her age, that she smoked marijuana and shoplifted, and that
the victim's mother–Hebert's ex-wife–was also promiscuous." (*Id.*, p. 9.) The Court of
Appeals observed: "Essentially, all of the proposed testimony Hebert wished to produce
went to the alleged bad character of the victim and her mother." (*Id.*, p.9.) Finally, the
Court of Appeals reviewed Mr. Hathaway's post-conviction hearing testimony,
explaining that (1) "Hebert's proposed witnesses' testimony was not relevant because it
would not aid his defense," (2) "most of the testimony was inadmissible", and (3) "it was
a tactical decision not to call Hebert's proposed witnesses." (*Id.*) The Idaho Court of
Appeals concluded that "trial counsel was not ineffective for failing to call these
witnesses." (*Id.*)

This Court concludes that Petitioner's argument that his counsel performed
deficiently when he failed to call these witnesses fails under the "doubly deferential" lens
of habeas corpus. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (citation
omitted.) "We take a highly deferential look at counsel's performance, through the

**MEMORANDUM DECISION AND ORDER - 23**

deferential lens of § 2254(d)," explained the *Pinholster* Court. *Id*. (internal citation and punctuation omitted).

At the first level of deference, a court must "strongly presume" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 131 S.Ct. at 1402. The presumption is overcome only where the petitioner shows that "counsel failed to act reasonably considering all the circumstances." *Id*. (internal citation and punctuation omitted). Here, Mr. Hathaway testified that he did not call these witnesses because it would not aid the defense, most of the testimony was inadmissible, and it was a tactical decision. Given the nature of the only defense left to Petitioner–that the sexual contact with the victim that impregnated her was unintentional–the decision not to call these witnesses was a reasonable tactical decision.

This decision is a reasonable application of *Strickland*. Each criminal charge covered almost two years, and the victim testified that Petitioner had sexually abused her multiple times in each two-year period; therefore, calling witnesses who would testify that he did not have sexual contact with S.E. on July 4, 1999, would have been only minimally helpful, leaving open for dispute the remainder of the four years. The victim's sexual history was not admissible; the mother's alleged sexual relationship with a minor male was not relevant. Testimony that S.E. was a bad influence on other children her age, or that she smoked marijuana and shoplifted, was not relevant to whether Petitioner sexually

**MEMORANDUM DECISION AND ORDER - 24**

abused S.E. In fact, eliciting this type of testimony could have backfired, with the jury inferring that S.E.'s bad behavior was the result of the repeated sexual abuse.

On the witness stand, S.E. admitted that she had lied to her mother about being pregnant, falsified the date on her birth certificate, and shoplifted a bra, achieving the same result as Petitioner's proposed evidence to impeach the victim, but with more force, because the admissions calling into question her credibility came directly from S.E.

At the next level of deference, the United States Supreme Court has declared: "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786-87. Contrarily, here, reasonable inferences supporting counsel's decision can be drawn from the state court record. Accordingly, Petitioner's claim fails under § 2254, and federal habeas corpus relief is unwarranted.

### B.   *Claim Three (2)* (AEDPA Review)

Claim Three (2) is that Petitioner's trial counsel refused to present Petitioner's evidence. As noted above, Mr. Hathaway refused to try to put on inadmissible or irrelevant evidence, or any evidence that was contrary to the chosen defense theory.

On post-conviction review, the state district court outlined the very difficult task before Mr. Hathaway:

**MEMORANDUM DECISION AND ORDER - 25**

Mr. Hathaway concluded that Mr. Hebert's incontrovertible paternity of [the victim's child] meant the only defense available was that Mr. Hebert did not intentionally have sex with S.E. Mr. Hebert's defense at trial was that he awoke to find he had an erection and was ejaculating with S.E. on top of him. He said that when he realized what was happening, he slapped S.E. and threw her off of him. He contends that while there was not penetration, the contact was sufficient to impregnate S.E. Viewed in its very best light, that defense was, as the court of appeals noted, implausible. [Citation omitted].

The quality of a defense must be judged by the defenses that are reasonably available. Mr. Hebert suggests in his petition that he had a neurological problem caused by a stroke that rendered him impotent at the time the sexual contacts were alleged to have occurred. He put on no medical evidence that he had such a problem. Had he done so, it would have contradicted his trial testimony that S.E. became pregnant precisely because he had an erection.

(State's Lodging C-1, p.131.)

The state district court further found:

The facts demonstrate that Mr. Hathaway presented the defenses that Mr. Hebert insisted on: the phony Mexican marriage, the alleged lesbian liaison between S.E. and her mother in McCall. They carried no persuasive weight or relevance. I find that Mr. Hathaway did what he could with what he had to work with when he represented Mr. Hebert's defense.

(*Id.*)

On appeal, the Idaho Court of Appeals "obliged Hebert's request and reviewed all of the transcripts and records from both his criminal case and post-conviction case," and concluded that Petitioner failed to show that Mr. Hathaway's performance was deficient or that prejudice resulted. (State's Lodging D-8, pp.10-11.)

Here, again, the state appellate court's ruling on this claim is not so lacking in justification that there was an error well understood and comprehended in existing law

**MEMORANDUM DECISION AND ORDER - 26**

beyond any possibility for fairminded disagreement. *See Richter*, 131 S.Ct. at 786-87. Mr. Hathaway's refusal to put on evidence that was inadmissible or irrelevant to the elements of the charges was neither deficient nor prejudicial, as shown by the record in this case. Accordingly, Petitioner's claim fails under § 2254, and federal habeas corpus relief is unwarranted.

### C.   *Claims Three (3)* (AEDPA review)

Claims Three (3) and (9) are that Petitioner was denied the right to effective assistance of trial counsel because Mr. Hathaway failed to conduct a proper voir dire by miscalculating the number of peremptory challenges; and by failing to excuse several jurors for cause: (a) Michelle Curtis, the wife of arresting officer Brandon Curtis; (b) Tracey Blake, the girlfriend of Rick Fuentes, another of the arresting officers; (c) two friends or co-workers of the investigating officer Becky Drewery; (d) Sharon Deitrick; (e) Margaret George; and (f) Tracy Blade.

### (1)   <u>Number of Peremptory Challenges</u>

As to the number of peremptory challenges in Petitioner's case, the trial judge, the prosecutor, and Mr. Hathaway all mistakenly thought each side was entitled to seven peremptory challenges. (State's Lodging C-2, p. 162.) However, Idaho Code § 19-2016 and I.C.R. 24(c) allow for ten peremptory challenges (plus one for the alternate juror) when the offense is punishable with imprisonment in the state prison for life. both Petitioner's charges had the potential of a life sentence. *See* I.C. § 19-1508; I.C. § 18-1508A(1). (State's Lodging A-1, pp.17-18, 28-29.)

**MEMORANDUM DECISION AND ORDER - 27**

In determining this claim, the Idaho Court of Appeals relied on the trial transcript that reflected the progression and conclusion of jury selection:

> Although it may have been ineffective assistance for Hebert's attorney to fail to realize that Hebert was entitled to eleven peremptory challenges, Hebert cannot demonstrate prejudice on this record. Hebert did not use all seven of the peremptory challenges that he was given. Therefore, he cannot show he was prejudiced by not receiving four more such challenges, which presumably would have also gone unused.
>
> Furthermore, as the district court correctly notes, Hebert returned to the courtroom to personally view the jury before it was impaneled. He had an opportunity to remove the wife of the police officer at that time and declined to do so. Instead, Hebert personally approved the twelve jurors and the alternate. Additionally, with both of these inquiries, Hebert has not demonstrated that anyone who remained on the panel was biased against him.

(State's Lodging D-8, p.8.)

In *Ross v. Oklahoma*, 487 U.S. 81 (1988), the Supreme Court held that the Sixth Amendment does not provide any constitutional right to peremptory challenges. In *United States v. Martinez-Salazar*, 528 U.S. 304 (2000), the Supreme Court reiterated that it had long recognized that peremptory challenges are "auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." *Id*. at 311. Due process is not implicated because Petitioner did not use all of the peremptory challenges he thought he had. *See id.* at 313-14. Therefore, Petitioner's ineffective assistance of counsel claim must be premised on the inclusion of a biased juror on the jury, which would meet the required showing of prejudice.

A criminal defendant has a fundamental right under the Sixth and Fourteenth

**MEMORANDUM DECISION AND ORDER - 28**

Amendments to a fair trial by an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). To be impartial, the jury must be "capable and willing to decide the case solely on the evidence before it." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Actual bias is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.' " *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000). Even if just a single juror is biased, the defendant has been denied his right to fair trial. *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).

The determination whether a particular juror is biased is highly dependent on credibility and demeanor, and when a state court has conducted an investigation that is "reasonably calculated to resolve the doubts raised about the juror's impartiality," its ultimate determination on this issue is a finding of fact that is presumed to be correct in a federal habeas proceeding. *Dyer*, 151 F.3d at 974-75; *see also Patton v. Yount*, 467 U.S. 1025, 1036 (1984). A state court's finding that a juror can be fair and impartial will be upheld as long as it is fairly supported by the record. *Patton*, 467 U.S. at 1036-37.

Reviewing the Idaho Court of Appeals's opinion with deference, the Court concludes that Petitioner has not shown prejudice from Mr. Hathaway's error to not exercise additional peremptory challenges, as warranted by the particular charges. Each particular juror that Petitioner believes was biased against him clearly stated during voir dire that he or she believed that she could lay aside any prior information about the case or about witnesses or relationships and determine the case on its facts, and there is

insufficient evidence of actual bias in the record to undermine such statements made under oath.

As to the one juror who expressed a "trust" in a witness, Sharon Deitrick, the trial court took the time to explain exactly what the standard was and then re-ask the question about bias. (State's Lodging A-4, pp. 101-02.) The trial judge was able to observe the demeanor of jurors and determine whether the jurors were being sincere in their responses, something reviewing courts cannot perceive from a mere transcript, thus supporting the rule of deference to the trial judge. Nothing Petitioner has presented or argued shows that the decision of the judge to permit the jurors to stay resulted in a biased juror being retained on the panel. Likewise, Petitioner has failed to show that he or his counsel would have exercised more peremptory challenges had they realized they, in fact, could have done so. Accordingly, Petitioner has not shown that the Idaho Court of Appeals's decision is contrary to federal law, and, thus, federal habeas corpus relief is not warranted on this claim.

(2)   <u>Michelle Curtis</u>

Michelle Curtis, the wife of one of the arresting officers, was left on the jury. Michelle explained during voir dire that she was married to Brandon Curtis ("Brandon"), a local police officer, but that the relationship would not affect her ability to be impartial. (State's Lodging A-4, p.135.) Michelle admitted she knew Clearwater County Deputy Sheriff Frank Spencer, a state's witness, but it would not affect her ability to be impartial. (State's Lodging A-4, p.98.) Michelle also admitted that she knew Detective Becky

**MEMORANDUM DECISION AND ORDER - 30**

Drewery, but stated that it would not affect her decision. (State's Lodging A-4, pp. 102-03.)

During the post-conviction hearing, Mr. Hathaway testified that he knew Michelle's husband had arrested Petitioner on the charges upon which he was tried, but, because she would have been the alternate, he "felt it was better to leave her as the alternate rather than move her in as a sure pick member of the jury." (State's Lodging C-2, pp.163-64.)

Hathaway also agreed that it was his "normal practice to go over with the defendant the potential jurors and the jury list." (*Id.*, p.174.) Hathaway further agreed that Hebert was "fine with the jury panel" even though it included Michelle. (*Id.*, p.179.) In addition, Hathaway explained, "there's some things I know about Michelle Curtis" (*id.*, p.178):

> I knew that she and her husband were having trouble; that there was some acrimony -- that there was -- she was not happy with her husband. He wasn't happy with her. And it certainly appeared in a small community that the two were headed for a divorce. So to say that she was the wife of a police officer, yes, that's true. Does she believe everything that her husband says or does, that's certainly questionable, problematic.

(State's Lodging C-3, p, 388.)

Finally, when asked if Petitioner had requested that Michelle be stricken, Hathaway explained that Petitioner had not so requested: "She would have been gone, I had another preempt, and again it's his jury, not mine." (*Id.*, p.389.)

As noted above, the Idaho Court of Appeals explained that Petitioner had an

**MEMORANDUM DECISION AND ORDER - 31**

opportunity to remove Michelle Curtis, but instead he personally approved the twelve jurors and the alternate, and, that, importantly, Petitioner did not demonstrate on post-conviction review that any remaining juror was biased against him. (State's Lodging D-8, p.9.)

Here, Petitioner is unable to meet the doubly-deferential standard of review for federal habeas corpus claims because no actual prejudice resulted from counsel's decision to leave Michelle Curtis on the jury. Curtis expressed that she could be impartial regarding the evidence, notwithstanding her relationships with Brandon Curtis, Becky Drewery, and Frank Spencer, which were all responses observed by the trial court. Mr. Hathaway indicated that he knew that Curtis and her husband were having marital problems, thus showing that counsel had a strategy in leaving her on the jury. Finally, Petitioner himself took a last look at the jury and approved it, including Michelle Curtis, and counsel testified that, had Petitioner wanted to remove Curtis, counsel would have done so.

(3)    Girlfriend of Rick Fuentes

Tracey Blake said that she was "friends" with Rick Fuentes and with another law enforcement officer, but that would not affect her ability to be impartial. (State's Lodging A-4, pp. 133-34.) The trial court observed Blake's demeanor during her responses and permitted her to remain. Petitioner presented no evidence in the post-conviction proceedings showing that any relationship–whether it was friends or more-than-

friends–between Blake and Fuentes was such that it affected Blake's ability to be

impartial.

        (4)      <u>Friends or Co-workers of the Investigating Officer Becky Drewery</u>

Michelle Mathison said that she used to work with Becky Drewery, but that

wouldn't affect her. (State's Lodging A-4, p. 102.) Later, she was peremptorily stricken

by one of the parties. (*Id.*, p. 160.)

Joseph Newman said he had worked with Becky Drewery and Cherie Allen at the

Sheriff's Office for several years, but that would not affect him. (*Id.*, p. 103.) Virginia

Davis said that she had worked with Becky Drewery, and it would not affect her

judgment. (*Id.*) The trial court observed these jurors' demeanor during their responses and

permitted them to remain. No evidence shows that they were biased jurors.

        (5)      <u>Sharon Deitrick</u>

Sharon Deitrick said that she knew Becky Drewery because Sharon's husband had

worked with Becky's husband for a while. When asked if that would affect her ability to

be impartial, Sharon said, "I trust her." This response did not satisfy the trial court, who

then said, "My question is–," and Sharon responded, "No, I don't think so." (State's

Lodging A-4, p. 101.)

Still not satisfied, the Court then gave the following explanation to jurors:

> Because, ladies and gentlemen, I just – so you understand the context
> of this question it is important – remember this trial is very important to
> both parties and it is important that each of them have the type of jury that
> each of you would want if you had to be in either of their places. So when I
> ask if you can be impartial, that is, will you weight their testimony based on

**MEMORANDUM DECISION AND ORDER - 33**

> what they say and how they say it as distinguished from a relationship
> you've had with them in some capacity at some time in the past so based on
> that –

(*Id.*, p. 102.)

Ms. Deitrick then stated: "I can do that." The court clarified again: "You can be fair?" Ms. Deitrick responded: "Yes." (*Id.*, p. 102.)

The trial court observed Deitrick's demeanor during her responses, took the time to explain the relevant concepts behind the question, allowed Deitrick to respond after hearing the explanation, and ultimately permitted her to remain. There is no evidence that she was a biased juror.

(6)   Margaret George

Margaret George admitted that she had worked with Becky Drewery on a 9-11 three-night vigil, but said it would not affect her. (State's Lodging A-4, p. 102.) The trial court observed George's demeanor during her responses and permitted her to remain. No evidence shows that she was a biased juror.

(7)   "Tracy Blade"

There was no one named Tracy Blade on the jury panel. Juror Tracey Blake is discussed above.

(8)   Conclusion

To warrant habeas corpus relief on a claim of juror bias, Petitioner must point to something in the record that reflects actual bias. This, he is unable to do. While many of the jurors on Petitioner's jury may have had reason to be biased, all those who remained,

**MEMORANDUM DECISION AND ORDER - 34**

expressed in open court that they could be impartial and decide the case based on the facts placed into evidence, and insufficient evidence in the record exists to call into question their statements made under oath. The Idaho Court of Appeals's opinion as to the impartiality of all of the jurors, therefore, is not contrary to, or an unreasonable application of, case law governing juror selection. The same result is obtained under de novo review. As a result, habeas corpus relief cannot be granted on this claim.

   **D.   *Claim Three (4)* (de novo review as an ineffective assistance claim; AEDPA review as judicial misconduct claim)**

Claim Three (4) is that trial counsel should have objected to the judge wrongfully entering the jury room during deliberations, "after knowing that the Petitioner told him that Bradbury had told me "you will be found guilty and sentenced to life in prison." (Dkt. 3, p. 3.). This is alternatively asserted as a judicial misconduct claim. Petitioner alleges that on January 10, 2003, ten months before trial, Judge Bradbury, who had just taken over the case from Judge Reinhardt and knew nothing about the case (State's Lodging A-4, p. 10), said to Petitioner: You will be found guilty, and sentenced to life in prison." (Dkt. 49, p. 16.)

Petitioner cannot point to a place in the record where Judge Bradbury told him that "you will be found guilty and sentenced to life in prison," (State's Lodging A-4), but Petitioner suggests that this statement was made off the record, after the court reporter stopped transcribing the hearing. There is no evidence from any other witness that this statement occurred. and the record reflects nothing but respectful and congenial discourse

among the judge, Petitioner, and counsel at the end of the hearing. (State's Lodging A-4.) Petitioner states that he has the statement recorded on an audiotape, but has not produced the tape.

Petitioner's recollection of this event is likely based on his arraignment. On October 1, 2002, Judge George R. Reinhardt III held the arraignment of Petitioner on the sexual battery charge. The judge explained the type of sexual conduct that would support the charge and the elements of the charge, and then asked Petitioner if he understood. Petitioner stated that he did. Judge Reinhardt then stated: "In the event that you are convicted of this offense you can be sent to prison for life. Do you understand that?" Petitioner answered, "Yes, sir." (State's Lodging A-2, p. 25.)

At arraignment, Judge Reinhardt was required to inform Petitioner of the maximum sentence for the charge. This is a legitimate and necessary part of due process, and the words were spoken by a judge other than Judge Bradbury, who presided over Petitioner's trial. Therefore, there is no evidence in the record supporting Petitioner's claim that Judge Bradbury said: "you will be found guilty and sentenced to life in prison." In any event, Petitioner's contention that Judge Bradbury entered the jury room on two occasions *due to a pre-conceived ill motive* is unsupported by evidence. The Idaho Court of Appeals found: "There is no evidence that the district court made this statement." (State's Lodging D-8, p. 4.) This finding is entitled to AEDPA deference.

The record reflects that, on October 7, 2003, the first day evidence was presented to the jury, the trial court took an afternoon recess at approximately 12:40 p.m. and

**MEMORANDUM DECISION AND ORDER - 36**

returned at approximately 12:53 p.m. (State's Lodging A-4, pp.212-13.) Once the parties

had returned from recess, the court explained to the parties:

> [T]the record should reflect, Counsel, that I realized I had forgotten to
> admonish the jury. I went right in and did that so they have been advised not
> to discuss the case between themselves, with others and to keep an open
> mind. That did occur just a couple of minutes after I should have done it.

(*Id.*, p.213.) Neither party raised an objection.

The next day the court again failed to give a proper admonition prior to the

morning recess, which started at approximately 9:42 a.m. and ended at 9:56 a.m. Upon

reconvening, the court explained, "As the jury was going out Deputy Willard reminded

me I had not made the admonishment. I followed them into the jury room and did

admonish them." (State's Lodging A-5, p.289.) Again, neither party objected.

Judge Bradbury also presided over post-conviction proceedings. In that

proceeding, he explained:

> On two occasions I forgot to admonish the jury to not discuss the
> case among themselves and to keep an open mind. As soon as I realized
> the mistake, I went to the jury room and admonished them. No juror was
> called as a witness and there is no evidence that anything more than what
> the record reflects occurred. Given the strong case against Mr. Hebert, he
> had the most to gain from the jury keeping an open mind until he had a
> chance to put to his defense. There is no discernable prejudice to Mr.
> Hebert.

(State's Lodging C-1, p.137.)

Addressing the issue on appeal, the Idaho Court of Appeals determined:

> After both recesses, the district court began by explaining that it
> had forgotten to admonish the jury not to discuss the case or form opinions
> until all the evidence was in. Hebert provided no evidence that the district

**MEMORANDUM DECISION AND ORDER - 37**

> court did anything to the contrary. Instead of being in the jury room while
> the jury was deliberating, the district court was admonishing the jury not
> to deliberate until all of the evidence had been received. Furthermore,
> although Hebert argues strenuously about the twenty-seven minutes, there
> is no evidence that the district court actually spent the entire length of
> both recesses in with the jury.

(State's Lodging D-8, p.4.) The Court of Appeals concluded that the district court

correctly denied Petitioner post-conviction relief on this claim.

In *United States v. Gagnon*, the Supreme Court of the United States opined:

> [T]he mere occurrence of an ex parte conversation between a trial
> judge and a juror does not constitute a deprivation of any constitutional
> right. The defense has no constitutional right to be present at every
> interaction between a judge and a juror, nor is there a constitutional right to
> have a court reporter transcribe every such communication.

470 U.S. 522, 526 (1985) (internal citation and punctuation omitted)).

Because the Idaho Court of Appeals cited no precedent for its decision, Petitioner

must show that the Idaho Court of Appeals's decision on this claim is contrary to United

States Supreme Court precedent. Petitioner has not made a threshold showing that a jury

admonition is a part of the trial that requires the defendant's or the attorneys' presence to

ensure fundamental fairness.

Petitioner also has not rebutted with clear and convincing evidence the finding of

the Idaho Supreme Court that nothing in the record reflected that Judge Bradbury made

the statement Petitioner attributed to him, *see* 28 U.S.C. § 2254(e)(1); therefore, this

claim fails, either as support for the ex parte jury communication claim, or as a stand-

alone claim that Judge Bradbury was biased against him. (*See* State's Lodging D-8, p. 4.)

**MEMORANDUM DECISION AND ORDER - 38**

Finally, the Court agrees that Petitioner has failed to demonstrate any "actual prejudice" stemming from the trial court's ex parte admonition to the jury. *See United States v. Madrid*, 842 F.2d 1090,1093-94 (9th Cir. 1988).

Because Petitioner has failed to show prejudice to his defense, his ineffective assistance of counsel claim fails on habeas corpus review under a de novo standard. Because the Idaho Court of Appeals's decision on the judicial misconduct claims is not contrary to United States Supreme Court precedent governing judicial ex parte conversations with the jury or biased expressions to a defendant, habeas corpus relief is not warranted on the judicial misconduct claim under § 2254(d)(1). Finally, Petitioner has not shown that the Idaho Court of Appeals's decision was based on an unreasonable determination of the facts found in the record. Therefore, relief under § 2254(d)(2) is also unwarranted.

### E.   *Claim Three (5)* (de novo review)

Claim Three (5) is that Petitioner's counsel refused to object when the prosecutor allegedly presented perjured testimony, "i.e., the prosecution told the jury that I had already confessed to the crime, and Detective Becky Drewery, testified to that as well[;] nowhere in the Petitioner's interview with Detective Becky Drewery, did the Petitioner ever tell her that he was having a sexual relationship with S.E." (Dkt. 3, p. 3.).

At trial, Becky Drewery and Petitioner both testified as to Petitioner's version of events in essentially the same way. (State's Lodging A-5.) Although one of the opening questions to Becky Drewery from the prosecutor was whether Petitioner "sa[id] that he

had a sexual relationship with [S.E.]," Drewery did not testify about a "sexual

relationship" but about the two specific sexual (rape) encounters Petitioner had revealed

to Drewery. (State's Lodging A-5, p. 360.) No "sexual relationship" was mentioned by

Drewery; the remainder of the prosecutor's questions to Drewery concerned "sexual

contact" or "sexual conduct." (*Id.*, pp. 360-63.)

During the post-conviction matter, Petitioner testified in the same way about the

sexual contact with S.E.:

| | |
|---|---|
| State: | What was it that you told Becky Drewery about what had happened? |
| Petitioner: | You want to know exactly what I told her? |
| State: | I want to know what you told Becky Drewery about how the child was made. |
| Petitioner: | I told Becky Drewery that I woke up July 4th of 2000, and her mother was laying in bed beside me. Her mother being Deanna Hebert, who was my current wife at that time, was laying beside me; and Sarah being my stepdaughter was on top of me when I woke up. |
| State: | Okay, and is that when the baby was made? |
| Petitioner: | No, I was under the impression that the baby was made at that time because Sarah drove [sic] off, okay, let me explain something. I threw Sarah off of me. The moment I found her on top of me I threw her off of me. |

(State's Lodging C-3, pp. 332-33.)

Petitioner argues that Mr. Hathaway should have objected to the "sexual

relationship" question or to Becky Drewery's testimony at trial. However, because

Petitioner's testimony at trial was essentially the same as Becky Drewery's testimony at

**MEMORANDUM DECISION AND ORDER - 40**

trial, Petitioner has not shown that any objection could have been made or would have been sustained based on whether a single question should have been phrased sexual "relationship," "conduct," or "contact." Accordingly, Petitioner has shown neither deficient performance nor prejudice under a de novo standard of review. Adding a layer of deference, the Court also concludes that Petitioner has failed to show that the Idaho Court of Appeals's decision is contrary to, or an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts. Therefore, no habeas corpus relief is warranted on this claim.

F.   ***Claim Three (6)* (de novo review)**

Claim Three (6) is that counsel refused to use prior inconsistent statements to impeach the victim. Petitioner argues that S.E. testified at trial (1) that Petitioner told S.E. that God wanted them to have a baby boy to save the world; and also (2) that Petitioner told her that she could have a baby girl and have fun dressing her up. (Dkt. 3, p. 3.) Petitioner argues that counsel should have used these inconsistent statements to impeach S.E.

While this may have been true, the subject of cross-examination is within the purview of counsel's strategic decisions. As set forth above, the post-conviction hearing testimony of Mr. Hathaway, as well as a review of the trial transcript, show that Mr. Hathaway had a clear strategy for Petitioner's defense and generally rendered competent assistance during trial. (See State's Exhibits A-3 to A-6; State's Lodging D-8.)

**MEMORANDUM DECISION AND ORDER - 41**

A strategy to not probe the victim on these points was reasonable under the circumstances. S.E. testified that when Petitioner *first tried* to convince her by telephone to try to have a baby with him, he used many tactics, such as having fun with a baby girl. (State's Lodging A-4, pp. 204-05, 209.) *After* that time, Petitioner spoke to S.E. using an elaborate religious scheme about a baby boy who was supposed to be the savior of the world. (*Id.*, pp. 225-26.) Even later, when an ultrasound revealed that the child was a female, Petitioner told S.E. that Satan had changed the sex of the baby because S.E. shoplifted a bra from JC Penney while she was pregnant. (*Id.*)

Accordingly, because it seemed from the record that Petitioner was talking about different points in time, the impeachment value of these statements would have been little to none. Even if the failure to cross-examine the victim on this point was not a strategy decision, then Petitioner has not shown that the error was so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment or that the error was so serious as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. at 687. Further, no prejudice occurred, meaning that there is no probability that the outcome of the trial would have been different had counsel used this point in cross-examination. As a result, Petitioner's claims do not warrant habeas corpus relief.

### G.   *Claim Three (7)* (AEDPA review)

Claim Three (7) is that counsel refused to prepare for trial, "i.e., ask for a continuance to, "i.e. interview, and subpoena witnesses, alibi witnesses, expert

witnesses." (Dkt. 3, p. 3.) At the post-conviction hearing, counsel admitted that he was pressed for time, and that he felt like the judge wanted the case to be tried quickly, because it was already a year old. Part of the difficulty in preparation was that Petitioner had chosen to live in North Carolina prior to trial, making communication between attorney and client difficult. While counsel admits that he did not develop the rapport with Petitioner that he would have liked; he testified that, nevertheless, he was prepared for trial. More importantly, counsel did not see anything further that could have been done that would have resulted in a different outcome. (State's Lodging C-2, pp. 152-181.) In Mr. Hathaway's opinion, the type of representation he provided did not cause Petitioner to be convicted; rather, "the facts of the case and Mr. Hebert's own testimony provided enough of a factual basis to sustain a conviction in the eyes of a jury." (*Id.*, p. 181.)

The Idaho Court of Appeals addressed this claim on appeal of the post-conviction matter. The Court of Appeals noted that "there was extensive testimony from Hebert, his trial attorney, and an expert witness regarding Hebert's trial attorney's preparation." (State's Lodging D-8, p. 11.) After a review of the state district court's decision and the entire record from the trial and the post-conviction matter, the Court of Appeals found: "Hebert's trial attorney filed pretrial motions, conducted an engaging voir dire, allowed Hebert to approve the jury, made objections at trial, vigorously cross-examined witnesses, and essentially did the best he could with Hebert's case." (*Id.*) That court concluded that trial counsel was not deficient and that no prejudice resulted from his representation of Petitioner. (*Id.*)

MEMORANDUM DECISION AND ORDER - 43

Here, again, Petitioner has failed to make a showing of anything additional Petitioner's counsel could have done to change the outcome of the trial. Although Petitioner wanted counsel to use an expert witness to show that Petitioner's medication caused impotence, such evidence would have been contrary to the primary defense, that S.E. had raped Petitioner. The primary defense, again, was necessitated by the finding that the DNA test of S.E.'s baby showed that Petitioner had fathered the child. Counsel was not required to put on evidence that was contrary to the primary defense theory. Accordingly, Petitioner has failed to show that the Idaho Court of Appeals's opinion was contrary to, or an unreasonable application of *Strickland v. Washington*. As a result, federal habeas corpus relief is not warranted.

### H.    *Claim Three (8)* **(AEDPA review)**

Claim Three (8) is that trial counsel "refused to put on any type of defense, "i.e., he tried to justify a crime that I never committed, a crime that had no justification." (Dkt. 3., p. 3.) This claim has been thoroughly covered above.

Petitioner fails to see the difficulty that the birth of his child on June 19, 2001, brings to his case. (A-1, p. 230) Counting back to the child's conception date (September 2000) (State's Lodging A-4. p. 217), leads to a date within S.E.'s minority (approximately 16 years, 8 months), because S.E. was born on January 28, 1984. (A-1, p. 189.) S.E.'s eighteenth birthday was on January 28, 2002. That is the essence of the sexual battery claim. The marriage occurred when S.E. was already pregnant, and thus could not have

retroactively legitimized the sexual conduct with a minor. Therefore, counsel's failure to put on evidence of the marriage was reasonable.

Petitioner has not provided an inkling as to what *better* defense could have been presented in light of the State's evidence. None of Petitioner's propose evidence would have supported a better defense in light of Petitioner's version of events and the positive DNA test. This claim warrants no relief for Petitioner's failure to show either deficient performance or prejudice.

**I.   *Claim Three (9)* (AEDPA review)**

Claim Three (9) is that trial counsel "refused to do anything I asked him to do, (i.e., remove jurors that are known to be related to the State's team, arresting officer's wife, Michelle Curtis, arresting officer's girlfriend Tracy Blake, the friends and co-workers of the State's investigating officer, Becky Drewery, Sharon Deitrick, and Margaret George." (Dkt. 3, p.3.) Each subpart of this claim has been addressed above, and warrants no further discussion or any relief.

**J.   *Claim Three (10)* (de novo review)**

Claim Three (10) is that trial counsel refused to argue that "Petitioner was married to the victim." (Dkt. 3, p.3.) The marriage in Mexico occurred on or about March 13, 2001. (State's Lodging A-5, p. 261.) The baby was conceived in September 2000, well before the marriage. It is undisputed that Petitioner was not married to the victim in September 2000, but was, in fact, still married to the victim's mother, Deanna Hebert, until January 2001. (*Id*., p. 366.)

**MEMORANDUM DECISION AND ORDER - 45**

Thus, while the charged crimes extended into January 2002 (when S.E. turned 18), Petitioner's particular defense was that he had sexual contact with Petitioner only in July and September 2000, when the alleged rapes occurred. Therefore, the marriage was not relevant to Petitioner's actual defense.

In Idaho, consent is not a defense to sexual crimes against children. *See State v. Palin*, 675 P.2d 49, 51 (Idaho 1983) (consent is not a defense to the crime of statutory rape); *State v. Oar*, 924 P.2d 599, 603 (Idaho 1996) (consent is not a defense to sexual battery of a minor). Therefore, evidence of Hebert's marriage to the victim was not admissible. The marriage could not serve to legitimize the sexual acts that occurred while the victim was an unmarried minor.

Mr. Hathaway's performance was not deficient, nor was there any prejudice resulting from his refusal to present evidence of the marriage, because it was not relevant to the charges or defense at hand. As a result, this claim does not warrant habeas corpus relief under *Strickland v. Washington*.

6.    **Claim Four: Additional Claims of Ineffective Assistance of Trial Counsel**

A.    *Claim Four (1)* **(de novo review)**

Petitioner alleges that his Fourteenth Amendment rights to due process and equal protection were violated when trial counsel "refused to ensure that I receive a fair and impartial trial, (i.e., allowing the arresting officer's wife to remain on the jury, the girlfriend of another arresting officer to remain on the jury, by allowing the two friends and co-workers to remain on the jury, one of which said 'I trust her' talking about Becky

**MEMORANDUM DECISION AND ORDER - 46**

Drewery)." (Dkt. 3, p. 4.) All subparts of this claim have been addressed above and warrant no relief.

    **B.**    *Claim Four (2)* **(de novo review)**

Claim Four (2) is that trial counsel refused to make objections, (i.e, allowing Bradbury to enter the jury room on two occasions, for a combined total of twenty-seven minutes, allowing the state to put on perjured testimony, without objecting, allowing the prosecutor John Swayne to tell the jury that I had told Becky Drewery that I had told her that I was having a sexual relationship with S.E., allowing me to be convicted when he possessed the evidence to prove that the state was convicting an innocent man, without putting on a factual defense based on the evidence he possessed." (Dkt. 3, p. 4.) All subparts of this claim have been addressed above and warrant no relief.

    **C.**    *Claim Four (3)* **(de novo review)**

Claim Four (3) is that trial counsel refused to prepare for the trial after being warned by the judge that no further delays would be tolerated because of the age of the case. (Dkt. 3, p. 4.) Counsel, in fact prepared for trial, and put on an adequate defense. This claim has been addressed adequately above several times, and no relief is warranted.

    **D.**    *Claim Four (4)* **(de novo review)**

Claim Four (4) is that trial counsel refused to use the State's witnesses' prior inconsistent statements, "(i.e., S.E.'s testimony between the police video interview with Becky Drewery, police report, and the trial, Becky Drewery's testimony, and the police interview between Becky Drewery, Frank Smokey Spencer, the preliminary hearing, and

**MEMORANDUM DECISION AND ORDER - 47**

the trial, Deanna's police interview with Becky Drewery, police report, and the trial,

Becky Drewery's testimony, and the police interview between Becky Drewery, Frank

Smokey Spencer, and the Petitioner, the Petitioner, never said he was having any sexual

relationship with S.E., at any time during the interview)." (Dkt. 3, p. 4.)

Petitioner's argument about the Becky Drewery "sexual relationship" vs. "sexual

contact" or "sexual conduct" has been thoroughly reviewed above, and will not be

repeated here.

Frank Spencer was one of the officers who interviewed S.E. in conjunction with a

possible aggravated assault charge involving Petitioner and S.E.'s mother. He reported to

Becky Drewery that S.E. "had disclosed that she had a child by her stepfather." (State's

Lodging A-12.) Spencer served some court papers on Petitioner. (*Id*.) Petitioner has failed

to show how drawing from an interview of Drewery and Spencer would have aided Mr.

Hathaway in his cross-examination or aided Petitioner in his case.

Deanna Hebert, Petitioner's wife at the time of the alleged incidents, testified at

trial that Petitioner tricked her and her daughter into believing that God wanted Petitioner

and S.E. to have sexual relations. Deanna testified that she permitted S.E. to engage in

sexual relations with Petitioner; that she showed S.E. how to engage in sexual relations

with Petitioner; and that she, S.E., and Petitioner engaged in sexual relations together.

Deanna admitted that she did not report the sexual abuse while S.E. was a minor, that she

did not insist on taking S.E. to get medical care when S.E. lied about being pregnant in

July, that she did not take S.E. to the doctor for prenatal care until S.E. was six months

**MEMORANDUM DECISION AND ORDER - 48**

pregnant, and that she aided S.E. in falsifying her birth certificate. (State's Lodging A-5, pp. 290-356.)

Petitioner reproduced a partial transcript of Deanna's interview with police in this action. (Dkt. 24-1, pp. 12-13.) It is unknown whether the reproduction is accurate, and the context of each question is missing. Petitioner attached this document to his post-conviction appellate brief. Part of this transcript shows Deanna telling Drewery that once S.E. told Deanna that she was curious and wanted to have sex with Petitioner, and once S.E. said, "well, it's OK, mommy, you know, this is what I wanted." (*Id.*)

All of this must be viewed in light of the fact that Petitioner undoubtedly fathered the daughter of his own minor step-daughter. That fact severely limited his defenses. Mr. Hathaway's strategy was to use Petitioner's version of events (which Petitioner had already told to Becky Drewery) to cast doubt on the stories of S.E. and Deanna, her mother.

Mr. Hathaway's cross-examination of S.E. and Deanna was not a textbook model of precision. Some parts of the cross-examination appear to wander somewhat purposelessly. However, Mr. Hathaway's performance, while less than stellar, was not deficient, because he did elicit admissions that each witness had not been truthful or forthcoming in the past, calling into question their credibility in a direct manner, which supported the theory of defense. (State's Lodgings A-4, A-5.) *See Mancuso v. Olivarez*, 292 F.3d 939, 954 (9th Cir. 2002) ("Defense counsel's cross-examination and impeachment of Crooks' credibility placed her performance well within the wide range of

**MEMORANDUM DECISION AND ORDER - 49**

professional assistance demanded of criminal attorneys."); *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) ("Although counsel's cross-examination may not have been as successful as he might have hoped, flawless cross-examination is rare. *Strickland* does not require perfect trial performance; it requires only competence.").

Even if Mr. Hathaway had used Deanna's statements to police as impeachment, the prosecution could have rehabilitated Deanna by showing that, generally, all of her statements echoed the same theme: that Petitioner convinced Deanna and S.E. to allow Petitioner to have sexual relations with S.E. because of his impersonation of being God's messenger, "Jericho." (Dkt. 24-1, p. 13.) S.E.'s testimony was similar; she even named her daughter "Jerica," a fact which fits Deanna and S.E.'s version of events, while Petitioner denied that he was religious. Further, evidence that S.E. sometimes told her mother that she desired to go along with Petitioner's wishes returns to the irrelevant argument of an unmarried minor child's consent to sexual acts, which is not a defense to sexual crimes against children.

Even if Mr. Hathaway's performance in cross-examination and in failing to use prior statements for impeachment purposes was deficient, Petitioner has not shown a reasonable probability that the outcome of the trial would have been different had Mr. Hathaway fashioned a more precise cross-examination of the witnesses, based upon their prior statements.

Essentially, the case pitted S.E.'s credibility against Petitioner's credibility. S.E.'s credibility was bolstered by the irrefutable timeline of the baby's conception and birth and

the DNA results; Petitioner's credibility was damaged by the letter he had written to S.E. and his vividly-detailed, yet implausible, version of events.

While Deanna's overall testimony matched S.E.'s testimony, Deanna's credibility was damaged by her own admissions of how she, as a mother and registered nurse, raised her daughter in such an aberrant manner between the ages of 11 and 18. The content of the juror's questions to Deanna tend to show that they thought her testimony was, in part, incredible, questioning why she acted as she said she did. (State's Lodging A-5, pp. 344-47.)

Based on all of the foregoing, the Court concludes that Petitioner has shown neither constitutionally deficient performance nor prejudice regarding this claim. The claims of error are not so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment or that Petitioner was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. at 687. Habeas corpus relief is not warranted on this claim.

**7.     Conclusion**

Pursuant to Petitioner's request, the Court has reviewed all of Petitioner's claims on the merits, without regard to procedural default, and has concluded that all of Petitioner's claims are without merit. Those claims that have been addressed by a state court have been given AEDPA deference, while those claims not addressed by the Idaho Court of Appeals have been reviewed under de novo standards. As a result of the

**MEMORANDUM DECISION AND ORDER - 51**

foregoing, the Petition for Writ of Habeas Corpus will be denied and dismissed with prejudice.

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*" Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits,"

but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has denied Petitioner's claims on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court **within thirty (30) days after entry of this Order**, and he may file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b)(2).

## ORDER

**IT IS ORDERED:**

1.    Petitioner's Petition Opposing Granting the State any Summary Relief (Dkt. 39) is DENIED.

2.    The Petition for Writ of Habeas Corpus is DENIED, and Petitioner's entire case is DISMISSED with prejudice.

3.    The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to

forward a copy of this Order, the record in this case, and Petitioner's notice

of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED:  **September 29, 2012**



Honorable B. Lynn Winmill
Chief U. S. District Judge